```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ANGELA S. BIANCO,
                              Plaintiff,

          -against-                                      MEMORANDUM AND ORDER
                                                         16-CV-444 (JMA)(AYS)
COUNTY OF NASSAU, NASSAU COUNTY
POLICE DEPARTMENT, DETECTIVE GENNARO
DESTEFANO, LIEUTENANT VINCENT G. BODEN,
NASSAU COUNTY POLICE DEPARTMENT JOHN
AND JANE DOES 1-10

                              Defendants.
-----------------------------------------------------------X
```
**SHIELDS, United States Magistrate Judge:**

Plaintiff Angela Bianco ("Plaintiff") commenced this action on January 27, 2016, asserting claims pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth, and Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the State of New York. DE 1. Named as Defendants are the County of Nassau, ("Nassau County"), the Nassau County Police Department, Detective Gennaro DeStefano, Lieutenant Vincent G. Boden, and John and Jane Does 1-10. DE 1. Plaintiff claims, inter alia, that she was falsely arrested and imprisoned. DE 1 Presently before the Court is Plaintiff's motion to amend her original complaint, DE 69, 71, as well as Plaintiff's letter motion seeking (1) to correct the proposed amended complaint, (2) an extension of time in which to conduct to expert discovery, and (3) an extension of time in which to respond to Defendants' opposition to Plaintiff's motion to amend. DE 72.

On November 20, 2017, Plaintiff filed a motion for leave to file an amended complaint. On November 22, 2017, Defendants filed opposition to Plaintiff's motion to amend. In their opposition, Defendants state they do not object to any aspect of Plaintiff's amended complaint

other than the proposed amendment to add Nassau County Police Officer Massaro ("Massaro") as a Defendant. See DE 70 at 2. Plaintiff's proposed amended complaint is annexed to a letter she submitted to his Court on December 13, 2017. DE 71.

BACKGROUND

I.  Facts Alleged In Complaint

Unless stated otherwise, the facts set forth below are drawn from the operative complaint.

As stated above Plaintiff alleges, inter alia, false arrest and false imprisonment, and malicious prosecution. The allegations in the complaint stem from an incident that occurred at the Helzberg Diamond store ("Helzberg"), located in the Roosevelt Field Mall (the "Mall") in Nassau County, New York, on October 27, 2014 at approximately 8:30 PM. DE 1 ¶ 15. Plaintiff had been shopping at the Mall on the date the incident occurred. Although Plaintiff had not visited Helzburg that day, she did visit other stores in the same mall at approximately the same time. Unbeknownst to Plaintiff, at nearly the same time she was shopping, a young couple who appeared to be in their late teens to early twenties, entered Helzberg and asked to see a diamond sapphire ring. Id. ¶ 16. According to the video surveillance, after handing the ring to the woman, the male stole the ring and fled the premises. The female left shortly after; however, she left a stolen credit card and driver's license behind. Id. ¶ 17. Upon alerting authorities about the stolen jewelry, the police began an investigation.

On November 21, 2014 at approximately 2:30 PM, Detective DeStefano and Lieutenant Boden arrived at Plaintiff's home. They began asking her about the incident, and then demanded that she accompany them for questioning. Plaintiff, having no idea why she was being questioned, demanded further details. Instead of offering any explanation, Detective DeStafano demanded Plaintiff's driver's license. Id. ¶ 34. After looking at the license, which Plaintiff states

makes clear that she was 48-years old (and unquestionably not in her late teens or early twenties), Plaintiff was nonetheless placed under arrest. Id. ¶ 35. Bianco begged Det. DeStefano and Lt. Boden to tell her what she was under arrest for, but all Det. DeStefano responded to the effect of "You know what you are being arrested for. You know exactly what you did, an incident at the mall, you and your boyfriend." Id. ¶ 38. Bianco continued to beg DeStefano to tell her the date, time, and location of the alleged theft and she would prove she had no involvement with the crime. Bianco begged DeStefano to let her prove her innocence—stating that she could produce receipts, credit card transactions, and cell phone records to prove she was not involved in the theft. Det. DeStefano, who Plaintiff describes as arrogant and dismissive, would not listen, and insisted that Bianco committed the theft, verbally taunting her. Id. ¶ 45.

At approximately 8:00 P.M., Bianco was transported from the Third Precinct to another location, where she was handcuffed in a manner that caused her pain despite the fact that she had advised the officers of surgery and the pain the handcuffing caused. Id. ¶ 53. There, Jane and John Does threatened and intimidated her, and in bad faith had her involuntarily brought to the Psychiatric Ward in Nassau University Medical Center. At the hospital, Bianco explained to the medical personnel that she was not crazy, but rather the police were arresting her for something she did not do and that they refused to listen to her. Id. ¶ 54. Plaintiff was not provided with an attorney despite requesting one while at her home and at the police station, and, instead, was questioned about the incident without an attorney present. Id. ¶ 45. On November 22, 2014, Bianco was arraigned in Nassau County First District Court, where she was conditionally released to the custody of the Department of Probation, and an order of protection was issued against her for the benefit of the victim, Nicole Sammartino, whose credit card and driver's license had been stolen. Id. ¶ 55. After her arraignment, Plaintiff learned for the first time the

3

details of the allegations against her. Plaintiff quickly gathered and produced receipts indicating she was in another location within Roosevelt Field Mall during the exact time in which the theft occurred—the same receipts she had begged Det. DeStefano and Lt. Boden to allow her to produce prior to her arrest, and again at the Third Precinct. Id. ¶ 56.

On February 5, 2015, Assistant District Attorney Alexander Levy stated that her office's investigation included a review of a security video in which it did not appear that the defendant who was arrested committed the crimes alleged. It was also acknowledged that after a review of all of the evidence in this case, the People had insufficient evidence to move forward against this Bianco. Id. ¶ 57. The District Attorney's Office thereafter moved to reduce, and then dismiss all charges against Bianco pursuant to CPL 170.30(1)(f), which the Honorable Francis Ricigliano granted. Id.

Plaintiff claims that as a result of the aforementioned facts, she has suffered, and continues to suffer, from severe emotional distress and anxiety, humiliation, permanent damage to personal and professional reputation, lost employment opportunities, damage due to libel and slander, and physical pain and suffering. Id. ¶ 59.

Plaintiff alleges that she was charged despite the fact that there was no probable cause or reasonable suspicion to believe that she committed these crimes, and despite the fact that at the time of her arrest there existed substantial credible and un-contradicted evidence that she could not have played any role in the charged crimes. The felony complaint lists the surveillance video as part of the factual basis for the information contained therein, which ADA Levy subsequently stated conclusively proved that the woman depicted in the video was not Bianco, and was the basis for the subsequent dismissal. Id. ¶ 46, Exhibit C at 2; Exhibit H at 1. That video shows a female over 20 years younger than Bianco, significantly slighter in build, height and weight with

a different hair color and style. In short, upon a cursory comparison of the perpetrator on the video with that of Bianco it is obviously apparent that they are not, and could not, be one and the same individual. Other than the same sex, they have virtual no characteristics in common. Id. at 46. Plaintiff claims that Defendants acted with malice, particularly where the surveillance video upon which they relied conclusively proved Bianco did not commit the theft giving rise to all charges brought against her, and where they knew that the witnesses' descriptions of the perpetrators did not match Bianco's description. Id. ¶ 100

II.     Procedural History

On January 27, 2016 Plaintiff, through her then attorney, commenced the instant action. DE 1. Defendants answered on February 25, 2016. DE 10. Thereafter, on March 8, 2016, the District Court issued a scheduling order, directing parties to appear for an initial conference on March 24, 2016. See Order dated March 8, 2016. The District Court granted a request for an adjournment, and held the conference on March 31, 2016. See DE 11, 12. After holding the initial conference, the District Court thereafter, held three separate settlement conferences in an attempt to resolve the case. See Order dated May 10, 2016, DE 12, DE 13, DE 14.

After the parties failed to reach a resolution during the third settlement conference, the District Court referred the case to this Court to oversee discovery. See DE 15. The next day, this Court directed the parties to appear for an initial discovery conference to be held on August 24, 2016. DE 16. After that conference, this Court directed Plaintiff (1) to inform Defendant if she is continuing her claim for lost damages, and if so, to provide Defendant with all documentation supporting that claim; (2) to inform Defendants if she was claiming medical damages, and if so, to provide Defendants with appropriate authorizations; and (3) to take depositions of the two

arresting officers. Additionally, the parties were directed to confer and submit a joint discovery schedule by October 31, 2016. DE 18.

Prior to the date the parties' discovery schedule was due, the parties requested an extension of time to complete depositions and to file a joint status letter. DE 20. That request was granted, and the Court extended the parties' time to complete the two then-named Defendant police officers' depositions, and the time to submit a joint status letter until November 25, 2016. See Order dated October 26, 2016.

On November 4, 2016, Plaintiff's Counsel filed a motion to withdraw as Plaintiff's attorney, DE 21. On November 14, 2016, the District Court granted the request, stayed the case for 30 days, and advised Plaintiff that if a notice of appearance for a new counsel is not filed within 30 days, Plaintiff will be deemed to be proceeding pro se. See Order dated November 14, 2016.

By letter dated December 9, 2016, Plaintiff sought an additional 60 days "to either remove herself from the lawsuit or attain a new attorney…." DE 22. Plaintiff characterized her prior attorney's withdrawal as "abandonment," and stated that she was having issues obtaining new counsel due to the lien placed on any recovery by her prior attorney. By that same letter, Plaintiff advised the Court that she was finally in possession of her case file and discovery, that she was no longer speaking with her prior counsel, and requested "a meeting amongst parties to resolve the possibility of discontinuing the case without any further injustices and negativity toward her." Id. The District Court granted Plaintiff's request, and directed parties to appear for a conference on February 23, 2017. See Order dated February 16, 2017. Such conference was held, at which time the Court scheduled a further conference for March 23, 2017, and advised Plaintiff

6

that if she is going to be represented by counsel, counsel must appear at the next conference. DE 25.

On March 20, 2017, Plaintiff wrote to this Court seeking an extension of time to the discovery deadlines. DE 26. On March 23, 2017, the District Court held the scheduled status conference, at which time Plaintiff was deemed to be proceeding pro se, and the case was referred back to this Court to complete discovery. DE 27. On that same day, this Court directed the parties to appear for a discovery conference on April 26, 2017. See Order dated March 23, 2017. Parties attended the discovery conference, at which time the Court directed all discovery to conclude by February 7, 2018. See DE 30, 31. Two days later, Plaintiff moved to compel Defendants to produce certain discovery. In Defendants' opposition, Defense Counsel stated that he would make every effort to respond to Plaintiff's requests. DE 32-33. Based upon Defense Counsel's representations, the Court denied Plaintiff's motion without prejudice. See Order dated May 8, 2017. That same day, Plaintiff moved for reconsideration. DE 34. Such motion was denied, and this Court directed parties to work together. DE 36.

On June 23, 2017, Parties provided individual status letters, and requested an in person status conference, DE 38, 39. In response to the parties' requests, the Court scheduled a conference for July 26, 2017. See Order dated June 26, 2017. During the July 26 conference, the Court directed all further depositions to take place at the Courthouse during times that the Court would be available. The Court additionally directed Defendant to produce specific discovery by August 16, 2017. Plaintiff was further advised that if she wanted to add Massaro as a defendant herein, she would be allowed to make a motion to do so within one week after taking his depositions. DE 44.

7

By letter dated August 2, 2017, Plaintiff set forth proposed dates to take depositions, and stated that Defense Counsel would not confer with her. DE 45. Thereafter, this Court directed Defendants to respond. In their response, Defendants addressed the deposition dates and additionally consented to an extension of time to move for leave to file an Amended Complaint, but not to its filing. DE 47. Based upon the parties' letters, the Court directed the parties to conduct the remaining depositions, and further extended Plaintiff' time to amend the complaint/join new parties until August 31, 2017. See Order Dated August 8, 2017.

On August 11 2017, parties, by individual status letters, advised the Court that they could not come to an agreement in scheduling two of the three depositions. DE 49, 50, 51. Upon receipt of the status letters, the Court directed the depositions to go forward within specific date ranges. See Order dated August 16, 2017. Soon after, once again by separate letters, the parties stated their continued disagreement as to when depositions should take place. DE 52, 53, 54. By Order dated August 28, 2017, the Court reminded parties that the depositions must be taken within specific date ranges, and directed the parties to confer as to dates certain. See Order dated August 28, 2017.

On August 30, 2017, parties informed the Court as to the progress of scheduling depositions. DE 56, 57. In Plaintiff's letter, she additionally sought an extension of time to file an amended complaint. DE 57. Defendant consented to the extension, but once again stated that consent to filing could not be given as the proposed amended complaint had yet to be produced. DE 58. The Court directed Plaintiff to produce her amended complaint to Defendant by October 2, 2017, and to confer with Defendant regarding the proposed amendments. See Order dated September 1, 2017. On September 27, 2017, Plaintiff sought a further extension of time to amend her complaint and to complete fact discovery based upon "defendant's non-compliance

and scheduling of impossible deadline[s]…" DE 60. Defendants replied to Plaintiff's request, and stated they do not oppose Plaintiff's application to an extension to seek leave to file an Amended Complaint, but do not consent to Plaintiff's application to extend discovery, since there is no reason to do so. DE 62. Based upon the parties' submissions, the Court extended the time for Plaintiff to serve Defendant with a copy of the amended complaint until November 6, 2017, and extended the discovery deadlines as follows:

> Additionally, discovery deadlines are extended as follows:
> All fact discovery completed by 12/6/17
> Exchange of Expert reports completed by 1/8/17
> Expert Depositions completed by 2/6/18
> Final date to take the first step in dispositive Motion practice by 3/8/18
> All discovery completed by 4/9/18
> Submission of joint pre trial order by 5/7/18.

See Order dated October 5, 2017. The Court additionally directed Defendants to respond to Plaintiff's letter dated September 27, 2017, and state if they have complied with the Court's order dated July 26, 2017. In their response, Defendants listed in detail all of the document discovery they had produced. DE 63. Soon after, Plaintiff filed her own letter stating that she disagreed with Defense Counsel's representation of the facts. DE 64. Defense Counsel then filed a response to Plaintiff's letter, in which he specifically addressed her concerns listed. DE 65.

By electronic order dated October 25, 2017, the Court addressed the outstanding discovery disputes. The Court further extended discovery deadlines as follows:

> They are as follows:
> All fact discovery completed by 12/6/17
> Exchange of Expert reports completed by 1/8/17
> Expert Depositions completed by 2/6/18
> Final date to take the first step in dispositive Motion practice by 3/8/18
> All discovery completed by 4/9/18
> Submission of joint pre trial order by 5/7/18.

See Order dated October 25, 2017.

On November 6, 2017, Defense Counsel advised the Court that he received Plaintiff's proposed amendment, and requested a briefing schedule as he could not consent to the proposed amendments. DE 67. On that same date, Plaintiff filed a letter motion for leave to file an amended complaint. DE 68. On November 20, 2017, Plaintiff filed an amended motion for leave to file an amended complaint and excess pages. DE 69. On November 22, 2017, Defense Counsel opposed the motion. On December 13, 2017, Plaintiff submitted a letter to this Court, which contained a copy of the proposed amended complaint and all exhibits. DE 71.

On January 10, 2018, Plaintiff filed a letter motion to correct the amended complaint (typos and redacted items); and additionally seeking an extension of time to the expert discovery deadline. DE 72. Plaintiff's letter further requested the Court to extend the time for her to submit a reply to Defendant's opposition to her motion to amend.

## DISCUSSION

I.  Legal Standard on Motion to Amend

Rule 15 of the Federal Rules of Civil Procedure governs the amendment of pleadings prior to trial. Fed. R. Civ. P. 15. Where, as here, leave of court is required to amend, the court has broad discretion to grant such leave "freely," "when justice so requires." Fed. R. Civ. P. 15(a)(2). Because amendments "tend to facilitate a determination on the merits," they are "generally favored." Zucker v. Porteck Global Servs., Inc., 2015 WL 6442414, at *4 (E.D.N.Y. 2015) (citations omitted). As stated by the Supreme Court, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). Thus, Rule 15 is construed liberally and courts have broad discretion to allow parties to add additional

causes of action. See Shpak v. Curtis, 2012 WL 511478, at *4 (E.D.N.Y. 2012); see also Hartman v. County of Nassau, 2008 WL 1923127, *18 (E.D.N.Y. 2008).

Despite the liberal construction generally afforded Rule 15, motions to amend are properly denied where they are founded in "undue delay, bad faith, futility, or prejudice to the non-moving party...." Mendez v. U.S. Nonwovens Corp., 2 F. Supp. 3d 442, 451 (E.D.N.Y. 2014) (citation omitted). The non-movant bears the burden of demonstrating that the proposed amendment is improper. Blaskiewicz v. Cnty. of Suffolk, 29 F. Supp. 2d 134, 137 (E.D.N.Y. 1998). An amendment is properly denied as futile if the proposed new claim "has no merit or fails to demonstrate a cognizable or sufficient claim." Zucker, 2015 WL 6442414, at *4 (citing Lamothe v. Town of Oyster Bay, 2011 WL 4974804, at *9 (E.D.N.Y. 2011)). When determining futility, the court reviews the viability of the proposed claim pursuant to the same standard invoked with respect to a Rule 12 motion to dismiss. Lucente v. Internat'l Bus. Machs., Corp., 310 F.3d 243, 258 (2d Cir. 2002); Morritt v. Stryker Corp., 973 F. Supp. 2d 177, 183 (E.D.N.Y. 2013); Catholic Diocese of Rockville Centre v. Inc. Vill. of Old Westbury, 2012 WL 1392365, at *5 (E.D.N.Y. 2012). Under this familiar standard, the claim sought to be asserted must plead facts sufficient to support a plausible claim to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). As in the Rule 12 context, the Court considering futility construes the facts alleged by the party seeking to amend as true, and views such facts in a light "most favorable" to the moving party. Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 604 (2d Cir. 2005).

In addition to seeking dismissal for lack of plausibility, a Rule 12 motion can also be asserted to strike specific factual allegations. Specifically, Rule 12(f) allows a court "on its own," or upon motion, to strike material that is "redundant, immaterial, impertinent or scandalous."

Fed. R. Civ. P. 12(f). Absence of showing of irrelevant or complete lack of support, allegations that "a complaint may be characterized as "overly narrative," or containing "generalized statements or matters of opinion" are insufficient to support a Rule 12(f) motion to strike. Lynch v. Southampton Animal Shelter Found. Inc., 278 F.R.D. 55, 65 (E.D.N.Y. 2011) (citing Kehr v. Yamaha Motor Corp., U.S.A., 596 F.Supp.2d 821, 829 (S.D.N.Y. 2008)).

In determining a motion to amend made by a pro se plaintiff, the Court must construe the motion in a manner that "raise(s) the strongest arguments that [it] suggest[s]." Harris v. City of New York, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotation marks omitted); see also Urena v. Wolfson, 2011 WL 7439005, at *2 (E.D.N.Y. 2011), adopted by, 2012 WL 669059 (E.D.N.Y. 2012). Indeed, a pro se litigant "should be afforded every reasonable opportunity to demonstrate that he has a valid claim." Dluhos v. Floating & Abandoned Vessel, Known as New York, 162 F.3d 63, 69 (2d Cir. 1998).

## II. The Proposed Amended Complaint

Plaintiff moves to file an amended complaint "based on facts and information or newly discovered evidence trough subpoenas, affidavits, testimony, and discovery to add Sgt. Mossaro as a defendant, add a [M]onell claim, detail Damage explanations of what was initially disclosed," and to add "substantial facts" in support of her claims. DE 69 at 1.

As noted, Defendants do not object to any aspect of Plaintiff's proposed amended complaint other than the request to add Massaro as a Defendant. See DE 70 at 2. As that is the only issue in dispute, the Court will address only that issue.

## III. The Parties' Positions

In support of her claim to add Massaro as a Defendant, Bianco relies on his alleged intentional fabrication of statements linked to both Plaintiff and her sister Cathy Bianco in an attempt to conceal his misconduct. DE 69 at 1. While Plaintiff acknowledges that Massaro was

12

not an arresting officer at Plaintiff's house, she states that he, along with other officers, caused her wrongful arrest and prosecution by alleging false factual statements against her. Id. Plaintiff argues that Massaro was therefore personally involved in her arrest because it was his falsified statements that supplied the alleged probable cause to investigate and arrest Plaintiff. In particular, Plaintiff claims that Massaro's written incident/case police reports were relied on by the detective assigned to the case, and that Massaro's statements were reiterated in the criminal complaint, and were relied on in support of the claim of probable cause to arrest. DE 68 at 3-4.

Plaintiff also argues that the naming of Massaro as a Defendant is necessary for her to support of her Monell claim. In support, she cites to other cases where Mossaro's conduct has been the subject of similar lawsuits. According to Plaintiff, Mossaro's conduct in conjunction with the conduct of other officers, demonstrates a policy of officers practicing a concerted effort to tailor fabricated facts to meet constitutional requirements for their own personal objective of raises, recognition, overtime and promotions. DE 69 at 3.

Plaintiff's proposed amended complaint alleges the following facts in support of her motion with respect to Massaro's conduct:

- Officer Massaro and Det. DeStafano forwarded altered assertions of the Complainant's supporting deposition. The assistant store manager, Mani Dawani (the Complainant in the criminal action), testified in her deposition that the victim's NY State driver license "looked like the female perpetrator" and the information offered for the application matched the identification. Therefore, Mani continued to process the application. Mani and the other eyewitness also testified in sum and substance that they believed the Driver's license to be that of the female perpetrator at the time of incident. Officer Massaro changed this account in Mani's supporting deposition to

13

state "the subject did not appear to be the same person in the photo: (Exhibits 10 and 11b). Proposed Amended Complaint ("Prop. Am. Coml."), DE 70, Ex. 2 at ¶ 28.

- Officer Massaro and detective DeStefano stated in the police reports and reiterated into the criminal complaint ultimately forwarded to the judges and linked Bianco to the crimes by way of fleeing the parking lot with a male conspirator from Helzberg crime location which was fabricated. Id. ¶ 40.

- Misconduct involved forwarding knowingly, deliberate, fraudulent, and disregard for the truth, of uncorroborated false statements by an alleged unidentified mall security person (who did not state such statements, yet written by Massaro and reiterated by DeStefano in a criminal complaint forwarded to DA's office, prosecutors and judges) regarding Plaintiff. Id. ¶ 43.

- Officer Massaro initiated false fabricated statements of Plaintiff, Angela Bianco in police reports (incident and case Reports) and was reiterated by Det. DeStefano in arrest reports …. Id. ¶ 53.

- Plaintiff claims that officer Massaro and Det. DeStefano purposefully omitted from police reports, supporting deposition, and the criminal complaint specific details concerning differences in age and physical description. Id. ¶ 57.

For its part, the County argues that the Court should not allow Massaro to be added to the complaint because such amendment would be futile. DE 70 at 1. The County argues that Plaintiff has failed to allege that Massero was personally involved in the alleged deprivation of Bianco's Constitutional rights.

IV.     Legal Principles: Necessity of Personal Involvement

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Jones v. Parmley, 2017 WL 4994468, at *3 (2d Cir. 2017), cert. denied, 2018 WL 942812 (U.S. 2018) (citing Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)); see also Lopez v. Martinez, 2018 WL 557862, at *5 (E.D.N.Y. 2018). Additionally, "a police officer can only be liable for a false arrest that occurs outside of his presence if he 'had reason to know' that such a false arrest was likely to occur." Escalera v. Lunn, 361 F.3d 737, 748 n.4 (2d Cir. 2004)(quoting Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)). A defendant officer may be found to be personally involved in a false arrest if the officer "personally participated in the events that constitute the basis for the alleged probable cause asserted by defendants as a defense to the false arrest charges against them." Rasin v. City of New York, 2016 WL 2596038, at *9 (E.D.N.Y. 2016). Similarly, an officer's alleged involvement in an investigation may sufficiently establish an officer's liability in a false arrest claim. See Gomez v. City of New York, 2017 WL 1034690, at *7 (E.D.N.Y. 2017) (stating that an officer's "alleged involvement in the investigation and photo array that led to Plaintiff's arrest are sufficient to establish false arrest liability under Section 1983.").

V.     The Motion to Amend is Granted

Reading Plaintiff's allegations in a light most favorable to her, as is required at this stage, and in light of the foregoing legal principles, the Court holds that Plaintiff has met the low burden required to state a claim against Massaro. In particular support of her proposed amendment, Plaintiff has attached the mall security blotter, which shows Massaro's involvement. See DE 71, Exs. 47a-e, ECF DE 71-6, page 37; DE 71, Ex. 60c, ECF page DE 71-2, page 10. Plaintiff's proposed amended complaint also attaches the deposition testimony of ADA

15

Blanshaft, who investigated the case, wherein she refers to Massaro's statement. DE 71, Exhibit 55b. Detective DeStafano's deposition testimony further supports Plaintiff's claim that Massaro's statement regarding Bianco's car led to a finding of probable cause to arrest her. That is because DeStefano testified that he relied on "the officer [that took] the information from the security officer" when drafting the criminal complaint. DE 71-4, ECF page 13-14. Plaintiff's allegations support a finding that Massaro had "reason" to know that if plaintiff owned a blue Mercedes with a New York registration of BKN1806, she would likely be arrested. Further, a finding that Massaro made statements without support would support a conclusion that the arrest was premised on false information. In sum, Plaintiff has adequately alleged that Massaro was personally involved in the investigation which led to Plaintiff's arrest, and that his statements formed the basis of the probable cause which led to the arrest. Although Plaintiff may not meet her burden at trial, she has nevertheless satisfied the minimal burden required for a motion to amend. See Gomez v. City of New York, 2017 WL 1034690, at *7 (finding that an officer's "alleged involvement in the investigation and photo array that led to Plaintiff's arrest are sufficient to establish false arrest liability under Section 1983."); see also Rasin, 2016 WL 2596038, at *9 (noting that "it would be entirely illogical to dismiss [the officer from the plaintiff's] case when one of defendants' primary assertions for there being probable cause to arrest [plaintiff] is [the officer's] statements….").

    In view of the fact that this Court has granted Plaintiff's motion to amend, it is unnecessary to consider her request for an extension of time to file additional papers in reply to Defendant's opposition to her motion. Had such a ruling been necessary, however, this Court would have denied that request (which came Plaintiff's request comes approximately one and a half months after Defendants filed their opposition), as untimely.

VI.     Plaintiff's Additional Requests

   A.     Motion to Correct the Amended Complaint

Plaintiff wishes to make certain amendments to the courtesy copy of the amended complaint filed with the Court. For the purpose of clarity, Plaintiff's specific requests are set forth below:

> The corrections of the courtesy copy amended complaint are as follows:
>
> 1. **EFC Document 71, attachment 2**--Part of the original notice of claim/original complaint Exhibits are missing due to mistake when plaintiff worked with a professional service and downloading 500+ pages into a pdf zip file on a copy machine, and should be filed behind the exhibit A that was partially filed under attachment 2 erroneously in the ECF filing. The full document has been corrected to reflect the document At Exhibit A.
> 2. **EFC Document 71, attachment 4**—Description Typo on the EFC labels. Says Exhibits 23-41, should say Exhibits 23-43 as corresponding documents filed on the ECF. Also, Exhibit 41b was misplaced behind 43d, should be behind 41a.
> 3. **EFC Document 71, attachment 18**—Exhibit 78(#20.) Mani Dawani's supporting deposition signature was cut off when entered onto the ECF.
> 4. **Photos are upside down, Exhibit Label #'s were cut off when entered into ECF. Labels have been corrected.**
> 5. **Helzberg Diamond Video Exhibits-** Some, due to typo are labeled Exhibit 71XX or 72X-159. All Helzberg Videos should be labeled Exhibit 70 Pgs 1-159 (not 71 or 72thru Pg. 159) corresponding to the amended complaint. New version corrected
> 6. Several personal information on private documents need to be redacted, ie: Driver's license info. Registration info, background check info. Please redact these highly sensative Pgs. *Plaintiff will enter letter next week with proposed Redactions to be considered by the court.*
> 7. *Add table of contents next week with the redactions.*
>
> Respectfully, [signature] 1/10/18

DE 72.

Items numbered 1-5 refer to corrections Plaintiff wishes to make to exhibits attached to the Proposed Amended Complaint. Plaintiff may correct her exhibits in an electronic format. Each exhibit containing corrected information must be properly labeled and placed onto a flash drive, and given to the Clerk of the Court to replace the existing exhibits.

With regard to item no. 6, to the extent that Plaintiff's exhibits contain personal information that she wishes to redact, Plaintiff may submit a letter to this Court identifying what information she wishes to redact. The letter must state whether Defense Counsel consents to

17

such redactions. If the Court agrees to the proposed redactions, Plaintiff will be directed to redact the appropriate information. Each exhibit containing redacted information must be properly labeled and placed onto a flash drive, and given to the Clerk of the Court to replace the existing exhibits. Thus, each exhibit containing redacted information must be replaced in its entirety in an electronic format.

B.     Plaintiff's Request for an Extension of Time for Expert Discovery

Plaintiff's motion for an extension of time to the discovery deadlines is granted as follows:

Exchange of Expert reports completed by 4/9/18

Expert Depositions completed by 5/7/18

Final date to take the first step in dispositive Motion practice by 6/8/18

All discovery completed by 7/9/18

Submission of joint pre-trial order by 8/7/18.

## CONCLUSION

Plaintiff's motions appearing as Docket Entries 69 and 72 are disposed of as follows:

- Plaintiff's motion to amend, appearing as Docket Entry No. 69, is granted.

- Plaintiff's newly amended complaint, along with any corrections must be served and filed, in the manner described above, by 4/2/18.

- Defendant shall respond to the Amended Complaint by 5/2/18.

- Plaintiff may correct the errors in the exhibits attached to the proposed amended complaint. In filing her corrected exhibits, Plaintiff must provide the Clerk of the Court a flash drive containing each exhibit that contains a correction. Such corrections must be filed by 4/2/18.

- Plaintiff must identify to Defendant the specific information she wishes to redact, and confer as to the proposed redactions. On 3/16/18, Plaintiff must file a letter with this Court outlining the specific redactions she wishes to make, and whether Defense Counsel has consented to the redactions. Upon receiving the letter the Court will make a determination as to whether such redactions shall be permitted. If Plaintiff's request is granted, she will be directed to provide the Clerk of the Court a flash drive containing each exhibit that contains a redacted document.
- Discovery deadlines are extended as follows:

    Exchange of Expert reports completed by 4/9/18

    Expert Depositions completed by 5/7/18

    Final date to take the first step in dispositive Motion practice by 6/8/18

    All discovery completed by 7/9/18

    Submission of joint pre-trial order by 8/7/18.

SO ORDERED


Dated: Central Islip, New York
       March 6, 2018

/s/ Anne Y. Shields
ANNE Y. SHIELDS
United States Magistrate Judge